UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CRIMINAL NO. 07-008-DLB

UNITED STATES OF AMERICA,                                                          PLAINTIFF,

V.             **MAGISTRATE JUDGE'S REPORT
                AND RECOMMENDATION**

DEFRIN DENNIS, and                                                                  DEFENDANTS.
JOHNISHA M. HENRY

## I. INTRODUCTION

This matter has been referred to the undersigned [R. 24] to conduct an evidentiary hearing and issue a Report and Recommendation concerning Defendants' motions to suppress tangible evidence. An evidentiary hearing regarding the motions was held before the undersigned on September 7, 2007. [R. 29]. Having considered the evidence presented and the parties' arguments, it is recommended that Defendant Defrin Dennis' Motion to Suppress [R. 25] and Defendant Johnisha M. Henry's Motion to Suppress [R. 23] be denied.

## II. FACTS & PROCEDURAL HISTORY

This case arises from the following facts. On March 13, 2007, Kentucky State Trooper Shane Goodal was patrolling Trace Road, in the vicinity of Rush, Kentucky, when he pulled over a red Ford Mustang driven by an individual who was identified as Mr. Cox. Trooper Goodal located a quantity of marijuana in the vehicle and on the person of Mr. Cox, placed him under arrest, and transported him to the Boyd County Jail. [R. 36 at 9].

In return for consideration in his case, Mr. Cox offered to arrange the purchase of a quantity

of cocaine from an individual he referred to as "D." Mr. Cox used his own cell phone to call "D" from the parking lot of the detention center, and arranged to purchase approximately four (4) ounces of cocaine. Trooper Goodal was present for the phone conversation, but could only hear what was being said by Mr. Cox. [R. 36 at 10]. According to Mr. Cox, "D" would be in the parking lot of the Burger King in Ashland, Kentucky to make the sale; he would be accompanied by a female and would be driving a red or white car with West Virginia license plates. [R. 36 at 19].

Trooper Goodal left the detention center shortly after this conversation took place, and began surveillance in the area of the Burger King and the 13th Street Bridge in Ashland. After a few minutes of surveillance, Trooper Goodal placed a call to Mr. Cox at the detention center; Mr. Cox then used his cell phone to contact "D," who told him that he was about to cross the 13th Street Bridge. Mr. Cox immediately relayed this information to Trooper Goodal. [R. 36 at 11].

Almost immediately after receiving this new information, Trooper Goodal observed a red vehicle with West Virginia tags driving through the intersection at the 13th Street Bridge. Trooper Goodal immediately turned to follow the vehicle, and engaged his emergency lights in order to initiate a traffic stop. Trooper Goodal did not observe any traffic violation, but intended to pull the vehicle over because of the information received from Mr. Cox. However, the driver of the vehicle did not immediately pull over, but continued to drive across the bridge in the direction of Ohio. Trooper Goodal noticed a "white object" exiting the passenger side of the vehicle, and going over the railing of the bridge. [R. 36 at 11].

Shortly after the white object exited the vehicle, Trooper Goodal passed the vehicle and the driver stopped. The vehicle was located on the bridge over the water when it stopped. Trooper Goodal approached the vehicle and observed Defendant Defrin Dennis in the driver's seat,

Defendant Johnisha Henry in the front passenger seat, and another individual, who is not a defendant in this action, in the back seat. Defendant Dennis gave Trooper Goodal permission to search the vehicle, and no evidence of drug trafficking was located, though Defendant Henry had a "couple hundred" dollars of cash. [R. 36 at 30-31].

After the vehicle was pulled over, Trooper Goodal was assisted by Kentucky State Trooper Podunavac, as well as members of the Ashland Police Department. Trooper Podunavac suggested that the white object may have been thrown from the vehicle while it was still over land. The troopers drove back across the bridge, leaving the occupants of the vehicle with the Ashland police, in order to locate the white object. The troopers drove to an area underneath the bridge, between the floodwall and the river, exited the vehicle, and began to search. Trooper Goodal testified that they quickly found a baggie containing what appeared to be a quantity of crack cocaine, approximately 25 yards from the bridge. The baggie was located on an area of freshly-cut grass underneath the bridge. The area was free of other garbage and debris, and was well-lit. [R. 36 at 13-14]. The troopers returned to the bridge, and Trooper Goodal placed the occupants of the car under arrest. He seized their cell phones, including the cell phone belonging to Defendant Dennis. Upon examining the numbers contained in the cell phone, he found that the phone was the same number Mr. Cox had called earlier to arrange the purchase of cocaine. [R. 36 at 15]. A subsequent search of the vehicle, including the use of a K-9 unit, uncovered no additional evidence. [R. 36 at 30-31].

Defendants filed motions to suppress both the cocaine and the evidence from the cell phone on the grounds that they were recovered in violation of the Fourth Amendment. Specifically, the Defendants allege that suppression is appropriate because the initial stop of the vehicle was not supported by reasonable suspicion; that there was a direct nexus between the illegal stop and the

discovery of the drugs; and finally, that Trooper Goodal should have secured a warrant prior to searching the call history on the cell phones. The Government contends that there was reasonable suspicion for the stop and that the Defendants lack standing to challenge the seizure of the crack cocaine. Finally, the US argues that the search of the call history log was a valid search incident to arrest.

### III. REASONABLE SUSPICION

As stated previously, the Defendants argue that the investigatory stop was not supported by reasonable suspicion, and the evidence subsequently obtained should be suppressed. However, upon a review of the evidence presented, it is clear that the stop was supported by reasonable suspicion.

In order to institute an investigatory stop, a police officer needs to have "reasonable suspicion" that a crime has occurred. Terry v. Ohio, 392 U.S. 1 (1968). While it is difficult to identify a precise formulation for what constitutes reasonable suspicion, the Supreme Court has stated:

> [T]he essence of all that has been written is that the totality of the circumstances - the whole picture - must be taken into account. Based upon that whole picture the detaining officers must have a *particularized and objective basis for suspecting the particular person stopped of criminal activity*.

United States v. Cortez, 449 U.S. 411, 417-18 (1981) (emphasis added).

Reasonable suspicion is a "commonsense, nontechnical conception[] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Ornelas v. United States, 517 U.S. 690, 695 (1996) (internal citation omitted). Therefore, when evaluating a police officer's conduct, the reviewing court must give "due weight" to the "specific reasonable inferences which [the officer] is entitled to draw from the facts in light

4

of his experience." United States v. Atchley, 474 F.3d 840, 847 (6th Cir. 2007).

In the present case, Trooper Goodal initiated the traffic stop of the Defendants based on information he received from an informant. Information from an informant may form the basis for reasonable suspicion. See Adams v. Williams, 407 U.S. 143 (1972). In order to provide reasonable suspicion, informant's information does not have to be of the same quantity or quality as would be necessary to support a probable cause determination. Id. at 147; see also Alabama v. White, 496 U.S. 325, 329 (1990) ("[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause."). Recent precedent from the Sixth Circuit reinforces that even information from anonymous informants can be sufficient to provide reasonable suspicion. See United States v. Atchley, 474 F.3d 840, 847 (6th Cir. 2007).

The information in the present case rises to the level required for reasonable suspicion. The informant, Mr. Cox, set up the drug transaction in the presence of Trooper Goodal, and provided information about the color of the car the Defendant would be driving as well as the time and location of the planned transaction. Importantly, the informant provided predictive information about the future movements of the Defendant, particularly when he noted that the Defendant was about to cross the bridge to return to West Virginia. The fact that there are possible "innocent explanations" for the Defendants' actions does not preclude a finding of reasonable suspicion. United States v. Garrido, 467 F.3d 971, 982 (6th Cir. 2006). In addition, upon activating his lights, Trooper Goodal testified that he saw a white object exit the vehicle through the passenger side window and go over the bridge rail. [R. 36 at 11]. The information provided by the informant was enough, based on Trooper Goodal's training and experience in drug investigations [R. 36 at 8-9], to establish reasonable suspicion for initiating an investigatory traffic stop.

Once a stop has been made, any subsequent detention of the individual "must not be excessively intrusive in that the officer's actions must be reasonably related in scope to circumstances justifying the initial interference." United States v. Davis, 430 F.3d 345 (6th Cir. 2005). In Davis, where the police detained the defendant on suspicion of drug trafficking, the court found that "the police had reasonable suspicion to detain Davis for the additional approximately thirty to forty-five minutes it took for the police to bring the first drug-sniffing dog to the scene." Id. at 354. In the present case, testimony indicates that the entire detention prior to arrest was approximately sixteen minutes. [R. 36 at 12]. After Trooper Goodal pulled over the Defendants, he and another officer had to search for the item that had been thrown from the car. It was reasonable for the police to briefly detain the Defendants while they attempted to locate the item that had been thrown from the Defendants' car.

The investigatory stop of the Defendants was supported by reasonable suspicion, and the length of the detention was reasonably related in scope to the purpose of the investigatory stop. Therefore, the stop and detention of the Defendants does not violate the Fourth Amendment, and cannot support suppressing the evidence at issue.

Even assuming, *arguendo*, that the initial stop was illegal, the applicable law would not support suppression of the evidence as the defendants had not been seized at the time it was allegedly abandoned. It is well established that abandoned property will not be admissible if the abandonment itself was the result of a Fourth Amendment violation:

> [A]lthough abandoned property may normally be obtained and used for evidentiary purposes by the police ... where a person has disposed of property in response to an illegal search or seizure by the police, courts have not hesitated to hold that property inadmissible.

6

LaFave, Search and Seizure, § 2.6

Therefore, if the Defendants were illegally seized prior to throwing the cocaine out of the car, they are entitled to suppress the evidence as a "fruit" of the illegal seizure. See United States v. Martin, 399 F.3d 750, 753 (6th Cir. 2005).

The Defendants cannot, however, show that they were illegally seized prior to abandoning the cocaine. It is the position of the Supreme Court, and has been followed in the Sixth Circuit, that a "seizure" requires more than a mere show of police force; there must be actual submission to the show of police authority. California v. Hodari D, 499 U.S. 621 (1991); United States v. Martin, 399 F.3d 750 (6th Cir. 2005). The Supreme Court has stated that "no Fourth Amendment seizure would take place where a pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit ..." County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998). The Court has further held that when there is no"actual submission [of the defendant] ... there is at most an attempted seizure, so far as the Fourth Amendment is concerned." Brendlin v. California, 127 S.Ct. 2400, 2405 (2007).

In the present case, the testimony of Trooper Goodal indicates that the "white object" was thrown from the car *after* Trooper Goodal turned on his lights, but *before* the Defendants actually submitted. [R. 36 at 11]. This means that at the time the "white object" was thrown from the car, there was merely an "attempted" seizure in progress, because Defendants had not actually submitted to the show of police authority. Under binding precedents such as Hodari D. and Martin, the abandoned cocaine cannot be suppressed as the "fruit" of the seizure because there was only an attempted seizure in progress at the time the evidence was abandoned.

The effect of this rule is that the cocaine is admissible regardless of whether there was

7

reasonable suspicion for the initial stop and seizure of the Defendants. In Hodari D. itself, the State conceded that there was no reasonable suspicion to validate the stop, but the seven-member majority of the Supreme Court ultimately held that the lack of reasonable suspicion was inconsequential, since the defendant had abandoned the evidence prior to being seized. Hodari D., 499 U.S. at 623, n.1. This position has also been adopted by the Sixth Circuit:

> The ruling in Hodari D. holds true even if the attempted seizure or show of authority constitutes police misconduct. If we were to hold as the defendant requests and recognize an exception to Hodari D. for pre-seizure abandonments caused by police misconduct, this exception would create a dichotomy in our jurisprudence based on a factor the Supreme Court indicated was irrelevant.

United States v. Martin, 399 F.3d 750, 753 (6th Cir. 2005). Settled precedent from the Supreme Court and the Sixth Circuit shows clearly that the issue of reasonable suspicion is irrelevant with regard to pre-seizure abandonment. The cocaine is, therefore, admissible under the Fourth Amendment regardless of whether there was reasonable suspicion for the stop.

## IV. SUPPRESSION OF ABANDONED PROPERTY

In addition to arguing that the stop was reasonable, the United States contends that the Defendants lack standing to challenge the seizure of the crack cocaine as it was abandoned when the Defendants allegedly threw it from their car while crossing the bridge.

The Supreme Court has repeatedly held that search and seizure of abandoned property does not violate the Fourth Amendment. See, e.g., Abel v. United States, 362 U.S. 217 (1960); California v. Greenwood, 486 U.S. 35 (1988). In the context of the Fourth Amendment, the term "abandonment ... does not refer to traditional concepts of property law." United States v. Tolbert, 692 F.2d 1041, 1044 (6th Cir. 1982). Rather, the pivotal inquiry in determining whether property has been

8

"abandoned" is "whether a person can claim a *continuing, legitimate expectation of privacy in the item at issue*." United States v. Robinson, 390 F.3d 853, 873 (6th Cir. 2004) (emphasis added). If a defendant has no legitimate expectation of privacy in an item, i.e. it is "abandoned," the courts say that he lacks "standing" to claim a Fourth Amendment violation occurred. United States v. Peters, 194 F.3d 692, 696 (6th Cir. 1999).

In the present case, the evidence at issue was found in a grassy area beneath a public bridge.[1] A review of the case law reveals that the area in which the property was located is essential to whether an individual has a reasonable expectation of privacy, and thus, whether the property is "abandoned." For example, an individual was held not to have abandoned his briefcase where he threw it into the fenced-in curtilage of his family home, because the curtilage itself enjoyed Fourth Amendment protections. Commonwealth v. Straw, 665 N.E.2d 80 (Mass. 1996). Likewise, courts will not find abandonment when the property is in an area within the immediate control of the defendant, and the defendant has taken no steps to disclaim ownership. See Smith v. Ohio, 494 U.S. 541 (1990) (no abandonment when defendant places item on hood of his car while responding to a police officer's inquiry). These cases held that the defendant retained a reasonable expectation of privacy in the property, even though he was no longer in actual, physical possession of it.

On the other hand, a finding of abandonment is appropriate when the property at issue is discarded in a public location. See, e.g., United States v. Martin, 399 F.3d 750 (6th Cir. 2005) (abandonment found where defendant threw gun onto ground while running from police); Adams

---

[1] This court need not determine whether the crack cocaine actually came from the Defendants' vehicle. If the crack cocaine found beneath the bridge did not belong to the Defendants, they have no standing to challenge its admissibility under the Fourth Amendment; this is because they have no reasonable expectation of privacy in property that was located in a highly public place and in which they claim absolutely no property interest.

9

v. Commonwealth, 931 S.W.2d 465 (Ky. App. 1996) (abandonment found where defendant threw bag from his vehicle while fleeing from police). In this line of cases, the defendants physically separated themselves from their property by discarding it in highly-public areas over which they exercised no control. Quite simply, the case law holds that there is no reasonable expectation of privacy in items that are discarded on public streets and sidewalks.

In the present case, the Defendants exercised no control over the area in which the cocaine was found, nor were they in close enough physical proximity to the cocaine that they could exercise any direct control over it. Therefore, assuming that the evidence was thrown from the passenger side of the Defendants' vehicle into the area beneath the bridge, the property is considered abandoned and the Defendants cannot assert an expectation of privacy in the evidence.

## V. EVIDENCE GATHERED FROM CELL PHONE

The Defendants also move to suppress all evidence gathered from Defendant Dennis' cell phone, primarily the cell phone call history log. The Defendants allege that the retrieval of this information from the cell phone was an unlawful warrantless search. This court finds that the information retrieved from the cell phone was acquired from a valid search incident to arrest, and should not be suppressed.

It is beyond contention that a police officer, when making a valid custodial arrest, may search the person of the arrestee, and the area in his immediate control. This has been interpreted broadly, to even include the search of an automobile when the officer first makes contact with the individual once the individual has gotten out of his vehicle. Thornton v. United States, 541 U.S. 615 (2004). The Court noted with approval that one of the primary rationales behind the search incident to arrest is "the need to preserve evidence for later use at trial." Id. at 619; see also, United States v.

10

Robinson, 414 U.S. 218, 234 (1973).

The officers did not impermissibly expand the scope of the search incident to arrest by checking the Defendants' cell phones.[2] In United States v. Finley, 477 F.3d 250 (5th Cir. 2007) cert. denied, 127 S.Ct. 2065, the Fifth Circuit held that it was lawful for police to conduct a search incident to arrest in order to recover call records and text messages from an arrestee's cell phone. Id. at 259-60. The panel specifically noted:

> It is well settled that 'in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.' United States v. Robinson, 414 U.S. 218, 235 (1973). Police officers are not constrained to search only for weapons or instruments of escape on the arrestee's person; they may also, *without any additional justification*, look for evidence of the arrestee's crime on his person in order to preserve it for use at trial.

Finley, 477 F.3d at 259-60 (emphasis added); Cf., United States v. Ortiz, 84 F.3d 977 (7th Cir. 1996) (officers may search pager incident to arrest to recover evidence).

The Sixth Circuit has not specifically ruled on the issue before this court,[3] but precedent shows that a search incident to arrest is lawful "so long as the defendant had the item within his immediate control near the time of his arrest." United States v. Romero, 452 F.3d 610 (6th Cir. 2006)

---

[2] Defendants' citation to the plurality decision in Walter v. United States, 447 U.S. 649 (1980) is unavailing. The Defendant correctly notes that the Walter plurality held that "an officer's authority to possess a package is distinct from his authority to examine its contents." Id. at 654. That case, involving a prosecution on obscenity charges, can be easily distinguished from the present case because the warrantless search in Walter occurred prior to arrest, and in the absence of any other exigent circumstances. Id. The present case, on the other hand, involves a search incident to arrest, which permits police officers to examine closed containers within the reach of the arrestee. New York v. Belton, 453 U.S. 454, 460-61 (1981).

[3] In United States v. Meriwether, 917 F.2d 955, 957 (6th Cir. 1990) a panel held that a defendant had no reasonable expectation of privacy in the numbers contained in pager.

(citing Northrop v. Trippett, 265 F.3d 372, 379 (6th Cir. 2001). There is nothing to indicate that the Sixth Circuit would treat the retrieval of information from a cell phone differently than it treats other evidence gathered in a search incident to arrest.

Defendant Dennis notes that at the time the search of the cell phone was conducted, there were enough law enforcement officers at the scene to make it impossible for him to destroy evidence, and thus a warrant should have been secured. This position does not accurately identify the law regarding a search incident to arrest. The test for validity of a search incident to arrest is not whether the defendant has actual, present capacity to destroy the evidence, but merely whether the evidence was within his immediate control near the time of his arrest. United States v. Williams, 483 F.3d 425, 430 (6th Cir. 2007). Indeed, courts often validate a search incident to arrest despite the fact that the defendant is obviously not in a position to destroy evidence. E.g. United States v. Poole, 407 F.3d 767, 773 (6th Cir. 2005) (defendant handcuffed while officer searching hotel room); Thornton v. United States, 541 U.S. 615 (2004) (defendant in back seat of patrol car while officer searched vehicle).

Furthermore, this court finds that the search of the cell phone did not violate the Electronic Communications Privacy Act (ECPA), 18 U.S.C § 2510, *et seq*. (1988). The present case is akin to the Sixth Circuit decision in United States v. Meriwether, 917 F.2d 955 (6th Cir. 1990), where the court found that retrieving a phone number from a pager was not covered by the ECPA. As noted by the Defendant, even if the present situation fell within the ECPA, that Act "does not provide an independent statutory remedy of suppression for interceptions of electronic communications." Meriwether, 917 F.2d at 960. The search of the cell phone should not be suppressed based on the ECPA.

## VI. ALLEGED DISCOVERY VIOLATION

The court also acknowledges Defendant Dennis' motion to suppress based on alleged discovery violations by the United States for failure to provide information relative to an alleged informant. However, the disputed information involving the informant falls within the Jencks Act. [R. 36 at 49]. A defendant has no constitutional right to Jencks Act material prior to trial. United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988). The defendant's ability to effectively defend himself at trial is adequately protected by the requirement that all Jencks Act material on a witness be turned over to the defendant after the witness has completed his direct testimony. 18 U.S.C. § 3500(a); Presser, 844 F.2d at 1283. "Any prejudice the defendant may suffer as a result of disclosure of the impeachment evidence during the trial can be eliminated by the trial court ordering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it." Presser, 844 F.2d at 1283-84.

This court finds no basis for finding a discovery violation by the United States that would require suppression of any evidence. The Defendant's motion should, therefore, be overruled.

## VII. CONCLUSION

Accordingly, and for the reasons set forth above, the undersigned hereby recommends that Defendants' motions to suppress tangible evidence [Records No. 23 & 25] be denied.

Specific objections to this Report and Recommendation must be filed within ten (10) days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004);

Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within ten (10) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Rule 72(b), Fed. R. Civ. P.

    Signed October 3, 2007.

**Signed By:**
*Edward B. Atkins*    *EBA*
**United States Magistrate Judge**